**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY T. NERI, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-0355** |
| | : | |
| **STATE FARM FIRE AND CASUALTY** | : | |
| **COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**Tucker, J.**                                                               **August 13, 2019**

Before the Court are Plaintiffs' Motion to Remand ("Motion to Remand") (ECF No. 5),

Defendant's Response in Opposition thereto (ECF No. 7), Plaintiffs' Motion to Strike

Defendant's Response in Opposition to Plaintiffs' Motion to Remand ("Motion to Strike") (ECF

No. 8), Defendant State Farm Fire and Casualty Company's Motion to Dismiss Plaintiffs'

Complaint Pursuant to F.R.C.P. 12(b) ("Motion to Dismiss") (ECF No. 4), and Plaintiffs'

Response in Opposition thereto (ECF No. 6). Upon consideration of the foregoing, the Court

holds as follows:

1.      Plaintiffs' Motion to Remand is DENIED;

2.      Plaintiffs' Motion to Strike is DENIED; and

3.      Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN

         PART as explained in detail below.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are residents of 3804 Brookview Road, Philadelphia, PA 19154 ("Property").

Compl. ¶¶ 1, 4, ECF No. 1. At some point, the roof over an attached patio ("Patio Roof") was

damaged.  Compl. ¶¶ 17, 23(a)–(f).  A local roofer who happened to be "familiar with the Property" inspected the Patio Roof and believed that the Patio Roof would have to be torn down completely because it was in danger of collapsing.  Compl. ¶¶ 23(a)–(f).  Based on this information, Plaintiff Mary T. Neri ("Mary")—the owner and a resident of the Property—took some "(rudimentary) measures to . . . prevent the Patio Roof from collapsing."  Compl. ¶ 23(e).

Then, given the damage to the Patio Roof, on July 19, 2018, Plaintiff Mary filed a claim for insurance coverage under a homeowner's insurance policy that she purchased from Defendant State Farm Fire and Casualty Company ("State Farm").  Compl. ¶¶ 2, 16, 19, ECF No. 1.[1]  Although State Farm initially explained that it would "promptly send an adjuster to inspect the Property and begin the process of adjusting her claim," State Farm did not inspect the Property, but instead, attempted to close Plaintiff Mary's claim as having been "abandoned." Compl. ¶¶ 24, 26, 27.  Ultimately, State Farm neither accepted nor declined coverage for the damage to the Property.  Compl. ¶¶ 33–34.

Meanwhile, around the time that Plaintiff filed her insurance claim, the Philadelphia area experienced extreme whether conditions including historic levels of rainfall, high humidity, and high winds.  Compl. ¶ 21.  Although Plaintiff does not specifically allege that these weather conditions were the cause of the underlying damage to her Property,[2] Plaintiff suggests that these weather conditions and State Farm's failure to implement any mitigation plan to address the weather resulted in additional damage to the Property.  State Farm's failure "to inspect the

---

[1] The other resident of the Property, Carol M. Neri ("Carol") is not alleged to be a signatory to the homeowner's insurance policy.  Compl. ¶ 4.

[2] *See* Compl. ¶ 19 (alleging that Plaintiff filed her claim on July 19, 2018); Compl. ¶ 21 (alleging that the extreme weather conditions affecting the Philadelphia area arose "[s]oon after Plaintiff filed her claim"); Compl. ¶¶ 23(a)–(f) (alleging that Plaintiff explained to State Farm that the Patio Roof, which formed a part of the Property, had already been damaged).

Property and provide Plaintiff with the funds that were required to rebuild the Patio Roof" resulted in "additional damage . . . to the Property including . . . damage to the main roof of the Property, the patio foundation, the patio slab, the patio footings, the patio windows and door, the furniture and fixtures on the patio and the infestation of mildew and mold underneath the main roof of the Property and in the interior ceiling of the Property." Compl. ¶ 55, ECF No. 1.

On December 21, 2018, with no decision from State Farm forthcoming about Plaintiff Mary's insurance claim, and faced with mounting damage to the Property, Plaintiffs Mary and Carol filed an eleven-count civil complaint against State Farm in the Philadelphia Court of Common Pleas seeking damages and other relief "in an amount in excess of Fifty Thousand Dollars ($50,000.00)." Notice for Removal of Civil Action from State Ct. ¶ 1, ECF No. 1. Plaintiffs' Complaint sets forth eleven causes of action:

| I. | Breach of the homeowner's insurance contract | (brought by Plaintiff Mary); |
| II. | Negligence | (brought by both Plaintiffs); |
| III. | Negligent Misrepresentation | (brought by both Plaintiffs); |
| IV. | Statutory Insurance Bad Faith | (brought by Plaintiff Mary); |
| V. | Fraudulent Inducement | (brought by Plaintiff Mary); |
| VI. | Fraud and Deceit | (brought by Plaintiff Mary); |
| VII. | Breach of the Duty of Good Faith and Fair Dealing | (brought by Plaintiff Mary); |
| VIII. | Violation of the Pennsylvania Unfair Trade Practices Act; | (brought by Plaintiff Mary); |
| IX. | Intentional Infliction of Emotional Distress; | (brought by both Plaintiffs); |
| X. | Unjust Enrichment and Constructive Trust | (brought by Plaintiff Mary); |
| XI. | Declaratory Relief and Injunctive Relief | (brought by Plaintiff Mary). |

Compl. 6–24.

On January 24, 2019, State Farm petitioned for removal of the case to this Court on grounds of diversity. The following week, State Farm filed its Motion to Dismiss seeking the dismissal of all counts against State Farm except Count I based on a breach of the homeowner's insurance policy. Mot. to Dismiss, ECF No. 4. Plaintiffs, meanwhile, filed their Motion to Remand the case to state court arguing that State Farm failed to establish that the case involved

an amount in controversy of at least $75,000—which is the minimum required for diversity jurisdiction under 28 U.S.C. § 1332—and failed to show that Plaintiffs and State Farm were completely diverse. Mot. to Remand, ECF No. 5-1. For these two reasons, Plaintiffs submit that the Court lacks diversity jurisdiction and must, instead, remand the case to the state court. Plaintiffs further filed a Motion to Strike State Farm's Response to Plaintiffs' Motion to Remand. Mot. to Strike, ECF No. 8.

## II.    DISCUSSION

As Plaintiffs' Motion to Remand implicates the Court's jurisdiction to preside over this case in the first instance, the Court addresses the Motion to Remand before turning to State Farm's Motion to Dismiss.

### A.    Motion to Remand

#### i.    Applicable Standard

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The "defendant bears the burden of establishing that removal jurisdiction is proper." *Hutchinson v. State Farm Fire & Cas. Co.*, Civil Action No. 18-cv-2588, 2019 WL 357974, *1 (E.D. Pa. Jan. 28, 2019) (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). To determine whether the district court would have had original jurisdiction over a removed case, the court looks to the facts alleged "at the time of the petition for removal." *Id.* at *2 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). For questions regarding the amount in controversy, for example, "[a] district court's determination . . . must be based on the plaintiff's complaint at the time the petition for

removal was filed." *Id.* (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)) (internal quotation marks omitted).

The district courts of the United States have original jurisdiction over cases presenting a federal question and cases involving diversity of citizenship. Under 28 U.S.C. § 1332(a), which establishes diversity of citizenship jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). "Citizenship" for natural persons "is synonymous with domicile, and the domicile of an individual is his true, fixed and permanent home and place of habitation." *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014) (quoting *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2014)). A person's domicile is an issue of fact that takes into consideration such factors as whether that person has a driver's license in a certain state, whether that person has paid taxes there, and whether that person has registered to vote. *See, e.g.*, *Park v. Tsiavos*, 679 F. App'x 120, 125 (3d Cir. 2017) (not precedential) (discussing factors relevant to the domicile determination).

In this case, Plaintiffs argue first that State Farm has failed to establish that the amount in controversy in this case meets the $75,000 minimum for purposes of diversity jurisdiction. Second, Plaintiffs argue that the Complaint contains insufficient allegations to establish, on the face of the Complaint, that the Plaintiffs and State Farm are completely diverse. The Court rejects both arguments.

### 1.    The Amount in Controversy Exceeds $75,000

The Court concludes that this case involves an amount in controversy of at least $75,000 because, at the time of State Farm's filing of its Notice of Removal, Plaintiffs sought damages under eleven causes of action in an amount "in excess of $50,000" in addition to punitive damages and attorney's fees under the Pennsylvania Insurance Bad Faith Statute, 42 Pa. Cons. Stat. Ann. § 8371.

It is well-established that "[w]hen both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied." *Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 476 (E.D. Pa. 2013) (quoting *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993)) (internal quotation marks omitted). Indeed, it is common in cases involving a claim of bad faith under 42 Pa. Cons. Stat. Ann. § 8371 for courts to include in calculations of the amount in controversy any potential punitive damages and attorney's fees available under the statute. *See, e.g.*, *Valley v. State Farm Fire & Cas. Co.*, 504 F. Supp. 2d 1, 5 (E.D. Pa. 2006) (denying a plaintiff's motion to remand based on purported insufficiency of the amount in controversy where the complaint included a claim for punitive damages and attorney's fees under 42 Pa. Cons. Stat. Ann. § 8371); *Hutchinson*, 2019 WL 357974, *2 (explaining that courts must consider both punitive damages and attorney's fees for purposes of diversity jurisdiction).

Plaintiffs have alleged that the Property has suffered extensive damage, including damage over and above those sustained to the Patio Roof. Among other things, the Property has suffered damage to the main roof, the patio slab, footings, windows, door, furniture, and damage to an interior ceiling of the Property and mildew and mold damage. Compl. ¶ 55, ECF No. 1. These damages alone, Plaintiffs allege, entitle them to judgment in excess of $50,000.

*Compare* Compl. 9, ECF No. 1 (demanding judgment in excess of $50,000 in connection with Plaintiffs' negligence claim) *with* Compl. 13 (demanding attorney's fees calculated using a three percent interest multiplier as well as punitive damages). Still, Plaintiffs claim not only a judgment in excess of $50,000 based on various common law and statutory violations, but also punitive damages and attorney's fees, which are uncapped under the law. *See Hutchinson*, 2019 WL 357974, *2 (noting that "there is no cap on the amount that can be recovered" under 42 Pa. Cons. Stat. Ann. § 8371). Thus, the Court concludes that considering the damages sought in the Complaint as well as the uncapped punitive damages and attorney's fees sought under the Pennsylvania Bad Faith Statute, the amount in controversy in this case is at least $75,000 and the Court may properly exercise diversity jurisdiction.

## 2. Complete Diversity Exists

To address Plaintiff's argument that complete diversity does not exist on the face of their Complaint, the Court notes first that it is not necessary that a party asserting diversity establish the precise citizenship of each party; instead, it suffices to "allege [, for example,] that [a] defendant is not a citizen of the plaintiff's state of citizenship." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015). The Court assumes for purposes of the Motion to Remand that Plaintiff's allegations in the Complaint are true and based on those allegations concludes that there exists complete diversity between the Parties. Without ordering that the Parties engage in jurisdictional discovery, which brings with it additional costs and delay, the Court concludes that on the record before it, Plaintiffs appear to be citizens of Pennsylvania and State Farm appears to be a citizen of some other state.

Plaintiff Mary resided at 3804 Brookview Road, Philadelphia, PA 19154, she is the owner of the Property. Compl. ¶ 1, ECF No. 1. Plaintiff Mary purchased a "homeowner's

policy" from State Farm to insure the Property suggesting that the Property was Plaintiff Mary's "home"—her "true, fixed and permanent home and place of habitation." *Freidrich*, 767 F.3d at 377. Plaintiff Mary refers throughout the Complaint to the Property as "her residence." *See, e.g.*, Compl. ¶ 23(a), ECF No. 1. Plaintiff Mary received official mail at the Property. *See, e.g.*, Compl. Ex. A; Mot. to Dismiss Ex. B, ECF No. 4-4. Plaintiff Carol also resides at the Property and shares the same surname as Plaintiff Mary suggesting that they are relatives, both domiciled at the Property.

As for State Farm's citizenship, Plaintiffs allege that State Farm conducts business in Pennsylvania, but otherwise has offices in Bloomington, Illinois. Indeed, Plaintiffs served State Farm with the Complaint by serving State Farm at its legal department located in Bloomington, Illinois. Compl. 51. Plaintiffs otherwise communicated with State Farm employees working out of State Farm's Atlanta, Georgia office. *See, e.g.*, Compl. Ex. D. Given these allegations, the Complaint provides a sound basis on which to conclude Plaintiffs' are citizens of Pennsylvania while State Farm is a citizen of some other, unknown state. Accordingly, complete diversity exists and the Court has diversity jurisdiction over this case.

### B. Motion to Strike is Moot

In view of the Court's decision to deny Plaintiff's Motion to Remand, Plaintiff's Motion to Strike State Farm's Response in Opposition to the Motion to Remand is denied as moot.

### C. Motion to Dismiss

Having determined that the Court has subject matter jurisdiction over this case, the Court now turns to Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court ultimately concludes that the Motion to Dismiss shall be granted as to Count II, Count

III, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, and Count XI.  The Motion to Dismiss is denied as to Count IV.

As all claims brought by Plaintiff Carol are to be dismissed, as discussed below, Plaintiff Carol shall also be dismissed as a plaintiff.  Thus, Plaintiff Mary's claim for breach of contract under Count I and her claim for statutory bad faith under Count IV remain.

### i.        Applicable Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint is plausible on its face when its factual allegations allow a court to draw a reasonable inference that a defendant is liable for the harm alleged.  *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).  A court must accept as true all factual allegations contained in a complaint and interpret them in the light most favorable to the plaintiff.  *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011).

### a.        The gist of the action and economic loss doctrines bar Plaintiffs' tort claims for negligence (Count II), negligent misrepresentation (Count III), fraudulent inducement (Count V), fraud and deceit (Count VI)

"The gist of the action doctrine bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract."  *McWalters v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 10–4289, 2011 WL 2937417, *2 (E.D. Pa. July 21, 2011) (quoting *Melhorn Sales, Serv. & Trucking Co. v. Rieskamp Equip. Co.*, 2010 WL 1049434, *11 (E.D. Pa. Mar. 18, 2010)).  "The simple existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other, but it does foreclose a party's pursuit of a tort action for the mere breach of contractual duties, without any separate or

independent event giving rise to the tort." *Id.* at *3 (citing *The Knit With v. Knitting Fever, Inc.*, Civil Action Nos. 08-4221, 08-4775, 2009 WL 3427054 (E.D. Pa. Oct. 20, 2009)). Thus, the "gist of the action doctrine" prohibits "tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Tung Thien Nguyen v. Allstate Insur. Co.*, Civil Action No. 18-5019, 2019 WL 2089994, at *5 (E.D. Pa. May 10, 2019) (quoting *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)). Manifold courts presiding over breach of insurance contract claims have concluded that the "gist of the action doctrine" bars plaintiffs from pursuing tort claims such as negligence, negligent misrepresentation, and fraud against an insurer where the parties' relationship is governed by an insurance contract.

Just as the gist of the action doctrine bars a plaintiff's recovery under a tort theory where the plaintiff's claims sound in contract, so too does the economic loss doctrine "prohibit[] plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *McWalters*, 2011 WL 2937417 at *3 (quoting *Werwinski*, 286 F.3d at 671) (internal quotation marks omitted). Thus, "[w]here the 'crux of [the] Plaintiff's allegations . . . is that [the] Defendant has not fulfilled its obligations under [an] insurance contract," the economic loss doctrine bars recovery for that failure. *McGuckin v. Allstate Fire and Cas. Ins. Co.*, 118 F. Supp. 3d 716, 721 (E.D. Pa. July 30, 2015) (citing *Vaughan v. State Farm Fire & Cas. Co.*, No. 14-1684, 2014 WL 6865896, at *4 n.6 (E.D. Pa. Dec. 3, 2014)).

Courts in Pennsylvania and in the Third Circuit have consistently concluded that the gist of the action and economic loss doctrines bar claims arising in the insurance contract context

such as: negligence, negligent misrepresentation, fraud, fraudulent inducement, and negligent infliction of emotional distress. *See, e.g.*, *Bealer v. Mut. Fire, Marine, and Inland Ins. Co.*, 242 F. App'x 802, 804 (3d Cir. 2007) (not precedential) (affirming a district court's decision to dismiss an insured's negligence, negligent misrepresentation, and fraud claims based on the gist of the action doctrine); *Tippett v. Ameriprise Ins. Co.*, No. CIV.A. 14-4710, 2015 WL 1345442, at *3 (E.D. Pa. Mar. 25, 2015) (concluding that gist of the action bared a plaintiff from pursuing a fraud claim against an insurer because the fraud claim was "not collateral to the contract, but actually derives from [the insurer's] failure to perform [its] duties under the insurance contract"); *McWalters*, 2011 WL 2937417 at *2 (dismissing claims against an insurer for intentional misrepresentation and negligent misrepresentation under the gist of the action and economic loss doctrines); *Simon v. First Liberty Insur. Corp.*, 225 F. Supp. 3d 319, 324 (E.D. Pa. 2010) (dismissing insured's negligence claim under the gist of the action doctrine); *Monck v. Progressive Corp.*, Civil Action No. 3:15–CV–250, 2015 WL 1638574, *2 (M.D. Pa. Apr. 13, 2015) (dismissing a plaintiff's claims for breach of fiduciary duty and negligence under the gist of the action doctrine).

Consistent with these courts, the Court concludes that the gist of the action and economic loss doctrines bar Plaintiffs claims under Count II (Negligence), Count III (Negligent Misrepresentation), Count V (Fraudulent Inducement), and Count VI (Fraud and Deceit). The Court articulates further support for dismissing these counts, to the extent necessary, below.

### 1. Count II for negligence is dismissed

Under Plaintiff Mary's first cause of action, she alleges that State Farm is liable for negligence by failing to conduct inspections of the Property, adjust Plaintiff's claim, and provide prompt coverage under the homeowner's insurance policy.

The Court concludes that Plaintiff's claim of negligence must be dismissed for at least two reasons. First, Plaintiff's claim is barred by the gist of the action and economic loss doctrines because Plaintiff's claim, at its core, is grounded in State Farm's alleged failure to perform under the homeowner's insurance policy.[3]

Second, Plaintiff's claim is also barred to the extent that it relies on an alleged violation of the Pennsylvania Unfair Insurance Practices Act ("UIPA") because the UIPA does not permit private recovery for a violation of its provisions. Plaintiff advances a claim for damages based, in part, on a theory that State Farm was negligent having breached duties imposed upon it by the UIPA, 40 Pa Const. Stat. Ann. § 1171.1, *et seq.* "Courts within the Third Circuit and the Commonwealth of Pennsylvania continue to recognize [, however,] that the UIPA does not provide plaintiffs with a private cause of action." *Tippett*, 2015 WL 1345442 at *2 (quoting *Weinberg v. Nationwide Cas. and Ins. Co.*, 949 F. Supp. 2d 588, 598 (E.D. Pa. 2013)) (internal quotation marks omitted). Indeed, in *Tippett*, the district court not only rejected a plaintiff's attempt to state a separate claim under the UIPA, but also rejected the plaintiff's arguments that proof of a UIPA violation might otherwise provide support for the plaintiff's independent bad faith claim. *Id.* Plaintiff's claim under the UIPA in this case is similarly barred.

---

[3] On similar facts, courts routinely dismiss negligence claims such as this. *See, e.g.*, *Bealer*, 242 F. App'x at 804 (affirming a district court's decision to dismiss negligence, negligent misrepresentation, and fraud claims under the gist of the action doctrine); *Tippett*, 2015 WL 1345442, at *3 (concluding that gist of the action barred a plaintiff from pursuing a fraud claim against an insurer because the fraud claim was "not collateral to the contract, but actually derives from [the insurer's] failure to perform [its] duties under the insurance contract"); *McWalters*, 2011 WL 2937417 at *2 (dismissing claims against an insurer for intentional misrepresentation and negligent misrepresentation under the gist of the action and economic loss doctrines); *Simon*, 225 F. Supp. 3d at 324 (dismissing insured's negligence claim under the gist of the action doctrine); *Monck*, 2015 WL 1638574 at *2 (dismissing a plaintiff's claims for breach of fiduciary duty and negligence under the gist of the action doctrine).

## 2. Count III for negligent misrepresentation is dismissed

Under Plaintiffs third cause of action for negligent misrepresentation, Plaintiffs allege that after Plaintiffs submitted their claim to State Farm, State Farm misrepresented to Plaintiffs that it would "promptly send an adjuster to inspect the Property." Compl. ¶ 61. State Farm's later failure to send an adjuster, Plaintiffs allege, resulted in additional harm to Plaintiffs. Compl. ¶ 66.

"While Pennsylvania law suggests that fraud in the *inducement* of a contract may not necessarily be covered by the gist of the action and/or economic loss doctrines, claims for fraud within the *performance* of the contract are generally held to be merely collateral to a contract claim for breach of those duties[,]" and, therefore, barred by both doctrines. *McWalters*, 2011 WL 2937417 at *4. Here, Plaintiffs' allegations relate to State Farm's nonperformance of duties imposed on it by the homeowner's insurance policy. Thus, Plaintiffs' claim for negligent misrepresentation is merely collateral to their underlying breach of the homeowner's insurance policy set forth under Count I.

## 3. Count V for fraudulent inducement is dismissed

Plaintiff Mary's fifth cause of action for fraudulent inducement is grounded in Plaintiffs' allegation that State Farm induced Plaintiff to enter into the homeowner's insurance policy agreement knowing that it would not perform on its obligations under the policy.

While there exists "[a]n exception to the applicability of economic loss doctrine . . . for certain claims based on fraud in the inducement where the fraud is 'extraneous to the alleged breach of contract, [and] not interwoven with the breach of contract,'" the exception is narrow. *McGuckin*, 118 F. Supp. 3d at 721 (citing *Stein v. Fenestra Am., L.L.C.*, No. 09-5038, 2010 WL 816346, at *4 (E.D. Pa. Mar. 9, 2010). "Thus, '[i]nducement claims remain viable only when a

13

party makes a representation extraneous to the contract, but not when the representations concern the subject matter of the contract or the party's performance." *Id.* (citing *Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 659 (E.D. Pa. 2002)).

Here, again, Plaintiff attempts to recast a breach of contract claim as a tort claim for fraudulent inducement. Plaintiff's allegations of fraudulent inducement relate not to any representations extraneous to the homeowner's insurance policy, but instead, relate entirely to State Farm's alleged nonperformance under the agreement. Therefore, Plaintiff's claim for fraudulent inducement is dismissed.

### 4. Count VI for fraud and deceit is dismissed

Plaintiff Mary's allegations in support of her cause of action for fraud and deceit closely track the allegations set forth under her cause of action for fraudulent inducement. Indeed, some allegations under Count VI for fraud and deceit are verbatim restatements of allegations under Count V for fraudulent inducement. *Compare* Compl. ¶¶ 96, 97, ECF No. 1 (allegations under Count VI) *with* Compl. ¶¶ 88, 89 (allegations under Count V). For this reason, the Court concludes that the rationale supporting dismissal of Count V applies with equal force here in support of dismissal of Count VI.

### b. Plaintiff Mary's claim for a breach of the covenant of good faith and fair dealing is subsumed in her claim for breach of the homeowner's insurance policy

#### 1. Count VII for breach of the covenant of good faith and fair dealing is dismissed

Under Count VII, Plaintiff Mary contends that State Farm breached the covenant of good faith and fair dealing by, among other things, allegedly misrepresenting that State Farm would inspect the Property in response to Plaintiff Mary's claim under the homeowner's insurance

policy, failing to conduct an inspection, failing to process and adjust Plaintiff's claim, and failing to pay Plaintiff's legitimate claim for coverage. Compl. ¶¶ 105–11, ECF No. 1.

The district court in *Pommells v. State Farm Ins. Co.*, recently explained that "[w]ith respect to a breach of contract action, Pennsylvania courts have held that 'the common law duty of good faith and fair dealing is implied in every contract.' Operating from that premise, courts have consistently concluded that a plaintiff cannot bring a freestanding common law bad faith claim and a separate breach of contract claim, as the former is subsumed within the latter." No. CV 18-5143, 2019 WL 2339992, at *6 (E.D. Pa. June 3, 2019) (quoting *Tubman v. USAA Cas. Inc. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013)). Courts frequently dismiss independent claims based on a breach of the covenant of good faith and fair dealing where such claims are brought in addition or in the alternative to a breach of an insurance contract claim. *See, e.g.*, *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 473 (E.D. Pa. July 11, 2011) (dismissing an insured's breach of the covenant of good faith and fair dealing claim reasoning that "there is no implied covenant of good faith and fair dealing claim separate from a breach of contract claim.").

Thus, the Court concludes that Plaintiff's standalone claim for breach of the covenant of good faith and fair dealing, which is grounded in the homeowner's insurance policy, is subsumed within Plaintiff's breach of contract claim under Count I and, therefore, is dismissed.

c.     **Plaintiff's claim under the Unfair Trade Practices and Consumer Protection Law "UTPCPL" relate to post-insurance contract formation conduct, which is not actionable under the UTPCPL**

1.     **Count VIII asserting a claim under the UTPCPL is dismissed**

Under Count VIII, Plaintiff Mary contends that State Farm violated the UTPCPL by engaging in deceptive practices including: failing to inspect the Property, "playing 'telephone tag' with Plaintiff" regarding Plaintiff's insurance claim.  Compl. ¶¶ 120–23, ECF No. 1.

While Plaintiff rightly notes that the "UTPCPL creates a private right of action in persons upon whom unfair methods of competition and/or unfair or deceptive acts or practices are employed and who, as a result, sustain an ascertainable loss," Compl. ¶ 115, ECF No. 1, Plaintiff fails to note that "the UTPCPL applies to the sale of an insurance policy [but] does not apply to the handling of insurance claims."  *Horn v. Minnesota Life Insur. Co.*, Civil Action No. 17-238, 2019 WL 1791412, *8 (E.D. Pa. Apr. 23, 2019) (quoting *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016)).

The allegations of State Farm's wrongful conduct under the UTPCPL relate solely to State Farm's actions after the execution of the homeowner's insurance policy.  Indeed, Plaintiff's allegations relate primarily to State Farm's handling of Plaintiff's insurance claim.  Thus, Plaintiff may not maintain a claim under the UTPCPL and Count VIII is dismissed.

d.     **Plaintiffs fail to state a prima facie case of intentional infliction of emotional distress ("IIED")**

1.     **Count IX for IIED is dismissed**

Under Count IX, Plaintiffs contend that "State Farm's conduct in not undertaking any of its contractual or statutory duties was . . . extreme and outrageous" and "[i]n particular, Plaintiffs have lived in fear of the Patio Roof collapsing."  Compl. ¶¶ 132, 138.  These allegations,

however, are insufficient to constitute, even if true, the sort of "extreme and outrageous" and "intentional or reckless" conduct addressed by the IIED cause of action.

"To make out an IIED claim, a plaintiff must show that the conduct was (1) extreme and outrageous, (2) intentional or reckless, (3) caused emotional distress, and (4) that the distress was severe." *Doughty v. Wells Fargo Bank, N.A.*, No. CV 17-5018, 2018 WL 1784159, at *3 (E.D. Pa. Apr. 13, 2018) (citing *Hoy v. Angelone*, 691 A.2d 476, 482, *as modified*, 691 A.2d 485 (Pa. Super. Ct. 1997)). For conduct to be "extreme and outrageous," it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Leboon v. Equifax Info. Servs., LLC*, Civil Action No. 18-1978, 2019 WL 3230995, *7 (E.D. Pa. July 17, 2019). Thus, one court has observed that:

> In keeping with these restrictive standards, the Pennsylvania Supreme Court has provided examples of conduct found to create a claim for intentional infliction of emotional distress, including conduct such as killing the plaintiff's child and, without notifying the authorities or medical personnel, burying the body in a field, or intentionally fabricating records suggesting that the plaintiff had killed another person.

*Id.* (citing *Hoy v. Angelone*, 720 A.2d 745, 753–54 (Pa. 1998)). Further, courts typically require plaintiffs to have suffered a "physical injury" to proceed on a claim for IIED. *Doughty*, 2018 WL 1784159 at *3 (citing *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994)).

Here, Plaintiffs have pled only that State Farm failed to perform its obligations under the homeowner's insurance policy in, among other ways, failing to inspect the Property or provide insurance coverage. These allegations do not constitute the sort of "extreme and outrageous" conduct required to state a prima facie case of IIED. Plaintiffs have also failed to plead that they

have suffered any physical harm because of State Farm's conduct.  Thus, Plaintiffs' claim for

IIED under Count IX is dismissed.

> **e.      Plaintiff cannot maintain a separate claim for unjust enrichment or constructive trust where the Parties' relationship is grounded in an underlying contract**

> **1.      Count X for unjust enrichment and imposition of a constructive trust is dismissed**

Under Count X, Plaintiff Mary alleges that she "has paid all of the premiums" due to

State Farm, and if State Farm retains those premiums without covering the damage to the

Property, State Farm will have been "unjustly enriched."  Compl. ¶ 141, ECF No. 1.

"The doctrine of unjust enrichment is inapplicable when the relationship between parties

is founded upon a written agreement or express contract."  *Grudkowski v. Foremost Ins. Co.*, 556

F. App'x 165, 169–70 (3d Cir. 2014).  In breach of insurance contract cases, courts routinely

dismiss unjust enrichment and other quasi-contractual causes of action.  *See, e.g.*, *Sayles v.

Allstate Insur. Co.*, 260 F. Supp. 3d 427, 450 (M.D. Pa. 2017) (dismissing an insured's unjust

enrichment claim where the relationship between the insured and the insurer was founded on an

insurance contract).

Here, Plaintiff's relationship with State Farm is based entirely on the homeowner's

insurance policy.  Where, as here, there exists a valid contract between the litigants, then neither

Party may proceed on a quasi-contractual claim like unjust enrichment or constructive trust.

Instead, the Parties may only pursue their rights under the contract that binds them.  Thus,

Plaintiff's quasicontractual claims under Count X are dismissed.

### f. Plaintiff Mary cannot maintain a separate action for declaratory and injunctive relief

#### 1. Count XI for declaratory and injunctive relief is dismissed

Under Count XI, Plaintiff Mary seeks "a judgment declaring that State Farm must, in addition to and not in lieu of the other relief sought in this Complaint, provide her with the policy benefits that are owing under the Policy." Compl. ¶ 149, ECF No. 1.

Federal courts routinely dismiss actions seeking declaratory judgment that, if entered, would be duplicative of a judgment on an underlying breach of contract claim. *See, e.g.*, *Nova Fin. Holdings, Inc. v. Bancinsure, Inc.*, Civil Action No. 11–07840, 2012 WL 1322932, *4 (E.D. Pa. Apr. 17, 2012) (granting a defendant's motion to dismiss a plaintiff's independent cause of action for declaratory judgment because the claim for declaratory judgment was duplicative of an underlying breach of contract claim); *Winslow v. Progressive Specialty Insur. Co., Inc.*, Civil Action No. 3:18-CV-1094, 2018 WL 6527323, *7 (M.D. Pa. Dec. 12, 2018) (dismissing a plaintiff's duplicative claim for declaratory judgment in the face of an underlying breach of insurance contract claim and observing that "pursuant to discretionary declaratory judgment authority, district courts have dismissed declaratory judgment claims at the motion to dismiss stage when they duplicate breach of contract claims within the same action.").

Here, Plaintiff seeks a declaration that State Farm must perform under the terms of the homeowner's insurance policy. This relief, to the extent that relief is warranted, would necessarily be included by a judgement in Plaintiff's favor on her underlying breach of contract claim set forth under Count I of the Complaint. Thus, Plaintiff's claim for declaratory judgment under Count XI is dismissed.

As for Plaintiff's claim for injunctive relief, Plaintiff has failed to state a prima facie case for injunctive relief. The Third Circuit has explained that:

> The decision to issue a preliminary injunction is governed by a four-factor test . . . . The plaintiff must show: 1) likelihood of success on the merits; 2) that he is likely to suffer irreparable harm; 3) that denying relief would injure the plaintiff more than an injunction would harm the defendant; and 4) that granting relief would serve the public interest.

*Del. Strong Families v. Attorney Gen. of Del.*, 793 F.3d 304 (3d Cir. 2015); *see also Boring v. Google Inc.*, 362 F. App'x 273, 282 (3d Cir. 2010) (providing that "Pennsylvania law provides that in order to establish the right to injunctive relief, a plaintiff must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested."). The standard for preliminary and permanent injunctions is substantially the same. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

Here, assuming Plaintiff has adequately pled the first of the four factors of the injunction standard, Plaintiff has nevertheless failed to plead the other three factors. Plaintiff has not identified that she is likely to suffer irreparable harm in the absence of an injunction. Instead, Plaintiff points to a "potential inability to obtain appropriate replacement insurance from another insurer," and the possibility that State Farm may raise Plaintiff's insurance premiums to retaliate against Plaintiff. Compl. ¶ 153, ECF No. 1. These allegations are too ill-defined and speculative to meet the injunction standard even at this pleadings stage. Plaintiff has further failed to allege any facts relating to the relative harms an injunction might exact on the Parties and failed to allege any facts regarding the public interest in this case. Thus, Plaintiff's claim for an injunction under Count XI is dismissed.

### g. The Complaint, read in its totality, suffices at the pleadings stage to state a claim for statutory bad faith

#### 1. Plaintiff Mary may proceed on Count IV for statutory bad faith

Finally, the Court concludes that Plaintiff may proceed on her claim for statutory bad faith.

To recover under the Pennsylvania Insurance Bad Faith Statute ("Bad Faith Statute"), "the plaintiffs must show, by clear and convincing evidence: '(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.'" *Gold v. State Farm Fire and Cas. Co.*, 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012) (citing *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)). "The broad language of [the Bad Faith Statute] was designed to remedy all instances of bad faith conduct by an insurer . . . . Therefore, . . . [a]n action for bad faith may also extend to the insurer's investigative practices." *Id.* (citing *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 415 (Pa. Super. Ct. 2004)).

Here, Plaintiff alleges that State Farm attempted to close her insurance claim despite never having sent an adjuster or inspector to evaluate the damage to the Property. Compl. ¶ 27, ECF No. 1. Plaintiff alleges that State Farm engaged in intentional "telephone tag" to delay and deny Plaintiff coverage under the homeowner's insurance policy. Compl. ¶¶ 120–23. Plaintiff alleges that, to date, State Farm has not scheduled an inspection of the Property or otherwise taken any action to deny or grant coverage under the homeowner's insurance policy. Compl. ¶¶ 33–34. At this early stage of the case, the Court concludes that these allegations, when read with the remaining allegations in the Complaint, suffice to establish a prima facie case of statutory bad faith.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is DENIED; Plaintiffs' Motion to Strike is DENIED; and Defendant's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART as explained in detail above.  An appropriate Order follows.